U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 1 1 2016

TONY R. MOORE  CLERK
BY _____
           DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

d

| | |
|---|---|
| GLENN J. BERNARD,<br>Plaintiff | CIVIL ACTION NO. 1:15-CV-02023 |
| VERSUS | CHIEF JUDGE DRELL |
| KABCO BUILDERS, INC., ET AL.<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

---

### REPORT AND RECOMMENDATION

Before the Court are First and Supplemental Motions to Compel Arbitration and Stay (Docs. 13, 24) filed by Defendants, Kabco Builders, Inc. ("Kabco"), Andries & Associates, LLC ("Andries"), and LA Movers, LLC ("LA Movers") (collectively, "Defendants"). Plaintiff, Glenn J. Bernard ("Bernard"), opposes the Motions.

The Motions have been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

## I.   Background

### A.   Factual Background

On April 14, 2014, Bernard purchased a manufactured home from Andries. (Doc. 1-3, p. 2). Kabco manufactured the home. (Id., pp. 2-3). Andries and LA Movers delivered and erected the home on a lot in Avoyelles Parish, Louisiana. (Id.).

According to Bernard, the home suffered from a litany of defects. (Id., pp. 3-4). Some defects pertained to materials: the type of refrigerator and air conditioning unit installed, for instance. Others involved workmanship: poorly fastened molding, incorrectly installed bathroom fixtures, and missing materials. (Id.). Bernard

~ 1 ~

acknowledges that Defendants repaired some of the defects.  But Bernard insists that many other defects still exist.  As a result, Bernard claims he has suffered damages for, among other things, repairs, lost market value, mental anguish, attorney's fees, and litigation costs.

According to Defendants, Bernard entered into three binding arbitration agreements governing his claims against each Defendant.  First, on May 13, 2014, Andries and Bernard completed a "Customer Closing Package."  (Doc. 13-2).  The "Customer Closing Package" contains the following "Arbitration Agreement":

> The parties agree that all disputes, claims, or controversies arising from or relating to this agreement or the relationships which result from this agreement, or the validity of this arbitration agreement or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by [Andries] with consent of [Bernard].   This arbitration agreement . . . shall be governed by [the Federal Arbitration Act]. . . . The parties agree and understand that they have a right or opportunity to litigate disputes through a court but they prefer to resolve their disputes through arbitration, except as provide (sic) herein.  **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURT (sic) TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY COMPANY AS PROVIDED HEREIN.**  The parties agree and understand that all disputes . . . including, but not limited to, all contract, tort, and property disputes will be subject to binding arbitration in accord with this agreement.

(Id., p. 14) (hereinafter, the "Andries Arbitration Agreement").[1]

---

[1] The Andries Arbitration Agreement designates "Evangeline Home Center" – Andries's trade name – as "Company."  There is no dispute, however, that Andries is the legal party to the Andries Arbitration Agreement.

Second, Bernard seeks to enforce a "Limited One-Year Warranty and Arbitration Agreement" (the "Warranty") against Kabco.  The Warranty contains the following arbitration agreement:

> Any and all disputes, controversies or claims of any kind or nature which arise from or relate to the subject manufactured home, this single limited warranty, the subject purchase transaction, documents received, delivered or executed in connection therewith or the parties thereto, including their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents and contractors shall be governed by the Federal Arbitration Act and if the claims cannot be resolved through direct discussions or negotiations, and unless the parties otherwise agree on a different mediation or arbitration process, then the claims involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction shall first be mediated as administered by the American Arbitration Association (the "AAA") under its Home Construction Arbitration Rules and Mediation Procedures before resorting to binding arbitration.  Thereafter, any unresolved claims shall be settled by binding arbitration administered by the AAA in accordance with its Home Construction Arbitration Rules and Mediation Procedures or such other rules as may be applicable, and any judgment on the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof.

(Doc. 13-3, p. 4) (hereinafter, the "Kabco Arbitration Agreement").

Finally, on May 13, 2014, Bernard signed a "Manufactured Home Transport Agreement" (the "Transport Agreement") during his transaction with LA Movers. (Doc. 24-1).  The Transport Agreement contains the following arbitration agreement:

> The parties agree that all claims, disputes, and controversies arising out of or relating in any way to this Agreement, the obligations of the parties to or under this Agreement, the interpretation or enforcement of any term, provision, condition, warranty, responsibility, exemption, exclusion, or limitation in this Agreement, the services provided under this Agreement, any condition of the Manufactured Home, the Current Location or the New Location, and any other claim, dispute or controversy that may exist or develop between the parties whether based on contract, tort, statute, common law, civil law, state law, federal

law or equity, shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under and in accordance with its Commercial Arbitration Rules, as may be supplemented or amended by AAA, it being the express intention of the parties that the nature and types of claims, disputes and controversies between them subject to arbitration be given the broadest and most inclusive possible coverage and interpretation.  IT IS SPECIFICALLY AGREED AND UNDERSTOOD THAT THE PARTIES WAIVE ANY RIGHT TO A JURY TRIAL.

(Id., p. 4) (hereinafter, the "LA Movers Arbitration Agreement").

Defendants maintain that Bernard's claims are subject to binding arbitration pursuant to these agreements.  Bernard disagrees.

**B.    Procedural Background**

On April 13, 2015, Bernard filed a Petition for Damages in the 12th Judicial District Court in Avoyelles Parish (the "12th JDC").  (Doc. 1-3).  In his original Petition, Bernard sought damages for the remaining defects in his manufactured home under the Louisiana New Manufactured and Modular Home Warranty Act (the "LMHWA"), La. R.S. 51:912.1, *et seq.*

On July 6, 2015, in response to an exception of prematurity, Bernard amended his Petition to enforce the Warranty against Kabco, and to assert claims under the federal Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2301, *et seq.*  (Doc. 1-3, p. 56).

Defendants promptly removed two days later.  (See Doc. 1).  Bernard moved to remand, arguing principally that Defendants failed to show damages could exceed $50,000.00 as required to sustain a claim under the MMWA.  (Doc. 8).  The Court denied Bernard's motion to remand, finding Bernard expressly asserted a claim

under the MMWA, and that this assertion – along with the bill of sale evidencing the value of the home – were sufficient to establish the Court's jurisdiction under the MMWA. (Docs. 16, 21).

On August 7, 2015, Defendants filed a Motion to Compel Arbitration (Doc. 13). In the original Motion, Defendants assert that Bernard signed two arbitration agreements, and that the Court should stay this matter and order arbitration in accordance with those agreements. (Id., pp. 1-2). Bernard responds that: (1) the MMWA does not allow binding arbitration of an express warranty under the Kabco Arbitration Agreement; (2) the Andries Arbitration Agreement is adhesionary; and (3) no arbitration agreement covers Bernard's claims against LA Movers.

On October 15, 2015, Defendants filed a Supplemental Motion to Compel Arbitration. (Doc. 24). In the Supplemental Motion, Defendants – for the first time – file and assert the LA Movers Arbitration Agreement. (Doc. 24-1). Bernard did not file a separate opposition to Defendants' Supplemental Motion.

## II.   Law and Analysis

### A.   General Standards

Under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), when parties have entered into a valid arbitration agreement, the Court must stay its proceedings and refer the parties to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has

been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  This provision of the FAA is mandatory: "A court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement." *In re* Gandy, 299 F.3d 489, 494 (5th Cir. 2002).

In determining whether to order arbitration, courts must engage in the following inquiry:

> This Court must first ascertain whether the parties agreed to arbitrate the dispute. In determining this question, there are two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. If it is determined that the parties agreed to arbitrate, this Court must determine whether any federal statute or policy renders the claims nonarbitrable.

JP Morgan Chase & Co. v. Conegie *ex rel.* Lee, 492 F.3d 596, 598 (5th Cir. 2007) (internal citations and quotations omitted).  Moreover, courts in our circuit distinguish between "broad" and "narrow" arbitration clauses. See Broussard v. First Tower Loan, LLC, CV 15-1161, 2015 WL 8478573, at *10 (E.D. La. Dec. 10, 2015) When a court encounters a "broad" arbitration clause – which covers, for instance, "all disputes" between parties – "'the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause.'" Id. (quoting Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir. 1993)).

**B.    The parties agreed to arbitrate all disputes at issue in this case.**

The FAA reflects Congress's declaration of a "national policy in favor of arbitration." See Snap-on Tools Corp. v. Mason, 18 F.3d 1261, 1263 (5th Cir. 1994)

(internal citation and quotation omitted).   Accordingly, "a valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." Pers. Sec. & Safety Sys. Inc. v. Motorola Inc., 297 F.3d 388, 392 (5th Cir. 2002) (internal citation and quotation omitted).

In determining whether a valid arbitration agreement exists, courts apply ordinary principles of the governing state's contract law – in this case, Louisiana contract law.[2] Graves v. BP Am., Inc., 568 F.3d 221, 222 (5th Cir. 2009).  The ordinary principles of Louisiana contract law require this Court – in relevant part – to interpret the "plain language" of the arbitration agreements, and to make no further inquiry when that language is "clear" and leads to "no absurd consequences."  See Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 237 (5th Cir. 2013).

---

[2] This Court applies Louisiana's choice of law rules.  See Marchesani v. Pellerin-Milnor Corp., 269 F.3d 481, 485 (5th Cir. 2001).  Under La. Civ. Code art. 3537, the Court must evaluate: "(1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other."

This case concerns agreements signed in Louisiana, and governing the construction of a manufactured home for a Louisiana resident in Avoyelles Parish, Louisiana.  The only foreign party is Kabco, an Alabama corporation.   (Doc. 5).  While Kabco apparently manufactured the home in Alabama (Doc. 1-3, p. 10), the remaining core facts arose in Louisiana.  Accordingly, Louisiana contract law applies.

Courts apply federal law to questions of arbitrability. Graves, 568 F.3d at 222. Under federal law, in construing the scope of an arbitration agreement, courts resolve any ambiguities in favor of arbitration. See Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002) opinion supplemented on denial of reh'g, 303 F.3d 570 (5th Cir. 2002).

Here, applying Louisiana contract law, the Court finds that each of Bernard's claims falls within the scope of a valid arbitration agreement.  Bernard makes no clear argument to the contrary.  And each of the arbitration agreements contains "broad" language subjecting all disputes regarding the agreements, and Bernard's manufactured home, to binding arbitration.[3]  Thus, the parties agreed to arbitrate all claims in this case.[4]

---

[3] The Andries and LA Movers Arbitration Agreements also contain express waivers of judicial remedies.  (Docs. 13-2, p. 14; 13-3, p. 4).  While the Kabco Arbitration Agreement is slightly less specific, it nonetheless expresses the parties' clear intent to resolve all disputes under the FAA barring amicable resolution.  (Doc. 24-1, p. 4).

[4] Although neither party raised the issue, the Court notes Bernard does not appear to have actually signed the Kabco Arbitration Agreement.  Rather, Bernard was given – and repeatedly sought to enforce – the Warranty, as evidenced by the affidavit and work orders submitted by Kabco (Doc. 13-3), as well as Bernard's pleadings (Doc. 1-3, pp. 56-57).  The Warranty conspicuously included the Kabco Arbitration Agreement.

It is well-settled that, while the FAA requires an arbitration agreement to be in writing, it does not require a signature.  See Dyson v. Stuart Petroleum Testers, Inc., 308 F.R.D. 510, 517 (W.D. Tex. 2015) (citing Valero Refining, Inc. v. M/T Lauberhorn, 813 F.2d 60, 64 (5th Cir. 1987)).  Likewise, "Louisiana law does not require an arbitration agreement to be signed by the parties." O'Quin v. Verizon Wireless, 256 F.Supp.2d 512, 515 (M.D. La. 2003) (citing In re Succession of Taravella, 98-834, p. 3 (La. App. 5 Cir. 4/27/99); 734 So.2d 149, 151).

C.    <u>**No federal statute or policy renders Bernard's claims nonarbitrable.**</u>

Bernard argues that the MMWA preempts the Kabco Arbitration Agreement. Bernard further argues that the Andries Arbitration Agreement is adhesionary, and therefore, unenforceable. Neither argument is persuasive.

1.    <u>**The MMWA does not bar arbitration.**</u>

Bernard contends that the MMWA prohibits binding arbitration of express warranty claims.  Accordingly, Bernard asserts that the MMWA preempts the Kabco Arbitration Agreement.  However, Bernard also acknowledges that his argument contradicts clear and binding precedent.  As a matter of law, the Court's analysis ends there.

In <u>Walton v. Rose Mobile Homes LLC</u>, 298 F.3d 470, 471 (5th Cir. 2002), the Fifth Circuit Court of Appeals addressed this question directly.  The court first summarized the relevant provisions of the MMWA, and the Federal Trade Commission's (the "FTC's") interpretation of those provisions:

> Before bringing a suit for breach of warranty, the consumer must give persons obligated under the warranty a reasonable opportunity to "cure" their failure to comply with the obligations at issue. <u>Id.</u> § 2310(e). The MMWA also permits warrantors to establish "informal dispute settlement procedures" for breach of written warranty claims, and to require consumers to resort to such procedures before bringing a civil action. <u>Id.</u> § 2310(a). While the term "informal dispute settlement

---

Bernard possessed, acknowledged, and availed himself of the benefits of the Warranty, and continues to assert the Warranty as a basis for recovery in this litigation. Bernard accepted, and is now bound by, the Kabco Arbitration Agreement, whether or not he signed it.  <u>See, e.g.</u>, <u>Vigil v. Sears Nat. Bank</u>, 205 F.Supp.2d 566, 568 (E.D. La. 2002) ("In addition, the [arbitration] agreements provided for their application when the [credit] card or account is used, which has been recognized as acceptance of terms under Louisiana law.").

procedure" is not defined anywhere in the text of the Act, the Federal Trade Commission (the "FTC") is instructed to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty." Id. § 2310(a)(2). If a warrantor establishes an informal dispute settlement procedure in accordance with the FTC rules, the warrantor is permitted to include language in the warranty requiring consumers to resort to this procedure "before pursuing any legal remedy" under the Act. Id. § 2310(a)(3)(C). The FTC has adopted a regulation stating that informal dispute settlement procedures under the MMWA cannot be legally binding on any person. See 16 C.F.R. § 703.5(j). The FTC therefore has found that written warranties cannot require binding arbitration. 40 Fed. Reg. 60168, 60211 (1975) ("[T]here is nothing in the Rule which precludes the use of any other remedies by the parties following a Mechanism decision.... However, reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act.") Thus, according to the FTC's interpretation, binding arbitration is simply impermissible under the MMWA.

Id. at 474-75.

However, noting the strong presumption in favor of arbitration, the Walton court, at length, disagreed with the FTC and concluded that "the text, legislative history, and purpose of the MMWA do not evince a congressional intent to bar arbitration of MMWA written warranty claims." See id. at 473-78 (internal citation and quotation omitted). Instead, the court held, "[t]he clear congressional intent in favor of enforcing valid arbitration agreements controls." Id.

Walton was the Fifth Circuit's last decision on this issue. Bernard correctly notes that other circuits may be divided. The Eleventh Circuit has held that "written warranty claims arising under the [MMWA] may be subject to valid binding arbitration agreements." Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1280 (11th Cir. 2002). In a withdrawn opinion, the Ninth Circuit disagreed: "[H]aving found that the statute on its face is ambiguous as to whether pre-dispute mandatory binding

arbitration provisions are valid under the MMWA, we conclude that the FTC's construction that they are not is reasonable." Kolev v. Euromotors W./The Auto Gallery, 658 F.3d 1024, 1031 (9th Cir.2011) opinion withdrawn, 676 F.3d 867 (9th Cir. 2012).

Whatever the disagreement in other circuits may be, there is no disagreement that Louisiana district courts must apply Fifth Circuit precedent. See St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 442 (5th Cir. 2000). Accordingly, every other district court in Louisiana to confront this issue has applied Walton. See Garner v. Dutchmen Mfg., Inc., CIV.A. 14-2160, 2015 WL 2383788, at *2 (E.D. La. May 7, 2015); Hamrick v. Dixie Motors, LLC, CIV.A. 14-1306, 2014 WL 4425789, at *1 (E.D. La. Sept. 8, 2014); O'Quin v. Verizon Wireless, 256 F.Supp.2d 512, 518 (M.D. La. 2003). This Court does the same.

Under Walton, the MMWA does not prohibit binding arbitration of MMWA written warranty claims. Therefore, the Kabco Arbitration Agreement is enforceable.

### 2.   The Andries Arbitration Agreement is not adhesionary.

Finally, Bernard argues that the Andries Arbitration Agreement is adhesionary. The Court disagrees.

In a watershed opinion, Aguillard v. Auction Mgmt. Corp., the Louisiana Supreme Court explained that "a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." See

2004-2804, p. 9 (La. 6/29/05); 908 So.2d 1, 8-9.[5]  Consent is the crucial issue: "[E]ven if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion." Id. at 11.  The party alleging a contract is adhesionary bears the burden of demonstrating a lack of consent. Id. at 10.

In determining whether an arbitration agreement was adhesionary, the Aguillard court considered a number of factors, including: (1) the physical characteristics of the agreement, including font size; (2) whether the arbitration agreement was distinguished from other portions of the contract, bearing in mind that the FAA preempts any statute requiring special notice of arbitration agreements; (3) mutuality in the arbitration agreement; and (4) the relative difference in bargaining positions. Id. at 20-22.

### a. Physical characteristics.

In this case, the physical characteristics of the Andries Arbitration Agreement do not favor Bernard's position.  It is true, as Bernard argues, that the agreement is part of a 15-page "Customer Closing Package" (the "Package"). (Doc. 13-2).  But the

---

[5] The Andries Arbitration Agreement is, by its terms, governed by the FAA.  However, the FAA allows courts to apply state doctrines of unconscionability – including the adhesionary contract analysis – with a note of caution: "[W]hile we underscore again that federal courts must exercise care in enforcing state doctrines of unconscionability to invalidate arbitration clauses, we conclude in this case that the controlling state cases can properly be applied under 9 U.S.C. § 2, which permits invalidation of arbitration agreements under generally applicable rules of state law." Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 170 (5th Cir. 2004).

length of the Package is neither exceptional nor determinative. The Arbitration Agreement appears on a single page of the Package which is clearly titled "Arbitration Agreement" in bold letters. (Id., p. 14); see Hill v. Hornbeck Offshore Servs., Inc., 799 F. Supp. 2d 658, 662 (E.D. La. 2011) (upholding arbitration agreements which were "set off as separate and distinctive clauses with bolded and italicized headings"). The font size appears to be identical to the rest of the Package, and is not unusually small. Bernard signed the Agreement, as did a company representative and a notary. And the Agreement even contains a capitalized and bolded waiver of litigation rights.

These characteristics make the Agreement substantially more conspicuous than the agreement upheld in Aguillard, which "was contained in a single sentence paragraph within the section of the document labeled in capital letters ANNOUNCEMENTS." See 2004-2804 at 21, 908 So.2d at 16. Therefore, the physical characteristics of the Andries Arbitration Agreement do not suggest that it is adhesionary.

### b. Concealment.

Bernard concedes the second factor – concealment – as the Andries Arbitration Agreement was plainly distinguished from the other provisions of the Package. This factor also favors Defendants' position.

### c. Mutuality.

Bernard argues that the Andries Arbitration Agreement lacks mutuality because, according to Bernard, the Agreement allows Andries to pursue judicial remedies at its whim. Bernard refers to the following provision:

> Notwithstanding anything hereunto the contrary, Company retains an
> option to use judicial or non-judicial relief to enforce a security
> agreement relating to the manufactured home secured in a transaction
> underlying this arbitration agreement, to enforce the monetary
> obligation secured by the manufactured home or to foreclose on the
> manufactured home.   Such judicial relief would take the form of a
> lawsuit. The institution and maintenance of an action for judicial relief
> in a court to foreclose upon any collateral, to obtain a monetary
> judgment, or to enforce the security agreement shall not constitute a
> waiver of the right of any party to compel arbitration regarding any
> other disputes or remedy subject to arbitration in this Contract,
> including the filing of a counterclaim in a suit brought5 (sic) by assignee
> pursuant to this provision.

(Doc. 13-2, p. 14).

Bernard argues that this provision is comparable to a provision struck down

in Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 2000-511 (La. App. 3 Cir.

12/13/00); 776 So.2d 589.   That provision excluded from arbitration claims which

might involve "an attempt to collect a debt owed to the Company by the Customer."

Id., 2000-511 at 8, 776 So.2d at 595.   The Louisiana Third Circuit Court of Appeal

held that, because the word "debt" was not defined in the arbitration agreement, "it

could easily be construed to apply to any action that one might imagine BellSouth

could pursue against the plaintiffs."   See id. 2000-511 at 10, 776 So.2d at 597.

For a number of reasons, Sutton's Steel is not controlling in this case.   First,

the Louisiana Supreme Court expressly abrogated Sutton's Steel, adopting a strong

presumption in favor of arbitration and rejecting an argument that an arbitration

agreement was adhesionary.   See Aguillard, 2004-2804 at 25, 908 So.2d at 18.[6]   More

---

[6] The Aguillard court also abrogated Simpson v. Grimes, 2002-0869 (La. App. 3 Cir.
5/21/03); 849 So.2d 740, a decision citing, and sharing similar facts with, Sutton's

importantly, the Andries Arbitration Agreement, unlike the Sutton's Steel agreement, is not so ambiguous and broad as to make it "totally illusory and . . . actually no promise at all." See id., 2004·2804 at 19, 908 So. 2d at 15.

Rather, Andries excluded only certain claims from arbitration, specifically claims to "enforce a security agreement relating to the manufactured home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the manufactured home or to foreclose on the manufactured home." (Doc. 13·2, p. 14). As Andries points out, there is no security agreement to enforce. That reservation is hollow. Further, foreclosures are commonly excluded from arbitration agreements because the law remains uncertain about whether arbitrators have the authority to order foreclosure. See Steven W. Bender et al., 2 Law of Real Estate Financing § 14:33.

The only remaining concern, then, is Andries's reservation of a judicial remedy "to enforce the monetary obligation secured by the manufactured home." That limited reservation does not, in itself, render the Agreement unconscionable. The reservation is limited to a single remedy. And the Andries Arbitration Agreement clearly states that Andries's potential use of this remedy "shall not constitute a waiver of the right of any party to compel arbitration regarding any other disputes or remedy subject to arbitration." (Doc. 13·2, p. 14).[7]

---

Steel. As noted below, however, the Third Circuit reheard Sutton's Steel and struck down the arbitration agreement under the new Aguillard analysis.

[7] In this context, the lack of "mutuality" in a contract is an indicator of adhesion and unconscionability. Iberia Credit Bureau, Inc., 379 F.3d at 169 n.10. However, this

In a similar case, the Louisiana Fourth Circuit Court of Appeal considered an arbitration agreement between a homebuyer and a home inspection company. Williams v. Keller Williams Realty, 2014-0202, p. 1 (La. App. 4 Cir. 11/5/14); 154 So.3d 605, 606. The agreement "required arbitration for any potential claim [the homebuyer] had against [the home inspection company], but allowed [the home inspection company] to bring a claim for non-payment of fees in any forum." See id., 2014-0202 at p. 5, 154 So.3d at 608. The homebuyer argued this reservation destroyed mutuality. Id. The court implicitly rejected the homebuyer's argument and upheld the arbitration agreement. See id. This case suggests that agreements which lack perfect mutuality, but which contain only limited reservations of one party's litigation rights, may still be enforceable.[8]

By contrast, Louisiana courts have declined to enforce arbitration agreements in which drafting parties have reserved broader, often unlimited litigation rights. See

---

mutuality analysis should not be confused with the distinct, and in this case inapplicable, "doctrine of mutuality of remedy." Id. Under that doctrine, "courts will not order an equitable remedy such as specific performance unless it is available to both parties." Id.

[8] Louisiana cases do not seem to indicate that mutuality is an "all-or-nothing" proposition. Rather, mutuality seems to be, at least in part, a question of degree. Louisiana cases have not been completely clear on this point, however. Even after Aguillard, for instance, the Williams and Sutton Steel decisions could be construed as conflicting opinions.

There is, however, a clear factual distinction between a reservation clause which is limited to one cause of action, and a reservation clause which nullifies one party's obligation to arbitrate. As noted below, the Court finds that the "mutuality factor" favors Bernard's position. But the Court notes this factual distinction in determining the weight to afford the mutuality factor in the four-part Aguillard analysis.

Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc., 2007-146, p. 13 (La. App. 3 Cir. 12/12/07); 971 So.2d 1257, 1267 ("[T]he arbitration clause at issue here does not limit the right to litigate for both parties. On the contrary, although the clause purports to limit the plaintiffs' options solely to arbitration, it grants BellSouth the option to pursue other remedies, including litigation."); Easterling v. Royal Manufactured Hous., LLC, 2007-192, p. 12 (La. App. 3 Cir. 6/6/07); 963 So.2d 399, 406 ("[T]he arbitration agreement in this case, unlike the one in Aguillard, did state that '[t]he lender or mortgagee may elect at any time not to submit to binding arbitration by providing written notice to the Retailer and Purchaser at the addresses set forth in this Agreement.'"); Lafleur v. Law Offices of Anthony G. Buzbee, P.C., 2006-0466, p. 11 (La. App. 1 Cir. 3/23/07); 960 So.2d 105, 113 ("[T]his particular arbitration provision was 'unduly burdensome,' because it attempts to solely bind the client, Mr. Lafleur, to the arbitration requirement for any dispute brought by or on his behalf, while allowing the attorneys, the Stern defendants, to avail themselves of any and all procedural and substantive law remedies.").

In this case, the Andries Arbitration Agreement limits the right of both parties to litigate. Andries's reservation of the right to litigate specific claims – one claim, in particular – is comparable to the limited reservation upheld in Williams. The Agreement does not allow Andries the unfettered discretion to litigate claims. But the Agreement also does not reflect perfect mutuality.

While a close question, this factor weighs in Bernard's favor. However, "[t]he lack of mutuality, alone, does not mandate a finding that the arbitration provision is

adhesionary and unenforceable." Hanlon v. Monsanto Ag Products, LLC, 48,010 (La. App. 2 Cir. 10/9/13, 13); 124 So.3d 535, 543. The Court finds that this is particularly true where the lack of mutuality is limited to specific claims.[9]

### d. Relative bargaining positions.

Finally, the record does not reflect that there was "such a difference in bargaining positions between the parties so as to justify the application of the principle of contract of adhesion to the arbitration clause." Aguillard, 2004-2804 at p. 22, 908 So.2d at 16-17. Bernard presents no competent evidence that he was unable to negotiate, or simply reject, the Andries Arbitration Agreement.[10]

---

[9] The Court observes that Andries's right to recover Bernard's debt is certainly a substantive claim, and is arguably one of the few claims that Andries may have against Bernard. Nonetheless, Andries remains obligated to arbitrate other claims it may have against Bernard.

[10] In his brief, Bernard asserts that the "anticipated testimony" of Jacob Andries may have shown that the Andries Arbitration Agreement was "not negotiable." (Doc. 17, p. 8). Bernard further asserts that his anticipated testimony would have shown that "he was told that he had to sign all of the documents," and that "he did not feel that he was in a relatively good bargaining position." (Id.). Of course, an attorney's briefs are not "evidence." See, e.g., Tucker v. SAS Inst., Inc., 462 F. Supp. 2d 715, 723 (N.D. Tex. 2006). Neither is "anticipated testimony." Even so, these arguments would not establish a difference in bargaining positions sufficient to render an agreement adhesionary.

Bernard also asserts that "he does not have a sufficient education to understand everything presented to him in the 'closing package.'" (Doc. 17, p. 8). That assertion is unavailing. "It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." Aguillard, 2004-2804 at 22, 908 So.2d at 17.

Additionally, there is no indication that Bernard was not free to avoid arbitration with Andries by refusing to contract with Andries and finding another vendor. This factor does not favor Bernard's position. See, e.g., Almon v. Higbee Co., CIV. A. 07-7063, 2008 WL 79956, at *4 (E.D. La. Jan. 4, 2008) ("There is no evidence to indicate that Dillard's [employer] was in such a superior bargaining position as to render Almon [employee] a far weaker party or the contract adhesionary."); Williams v. Keller Williams Realty, 2014-0202 at p. 5, 154 So.3d at 608 ("There is no evidence in the record that Mr. Williams was not in equal bargaining power or that he was compelled to sign the contract with CVN. Mr. Williams failed to prove that he was prevented from choosing another home inspector, who would not require arbitration, to complete the work."); accord Aguillard, 04-2804 at p. 24, 908 So.2d at 17 ("[T]here was no evidence that the plaintiff was not in an equal bargaining position as the defendants because the plaintiff could have avoided arbitration and the contractual provisions as a whole by simply not signing the agreement.").[11]

In sum, the Andries Arbitration Agreement is not adhesionary. The Agreement lacks perfect mutuality. But Andries's reservation of litigation rights is neither unlimited nor sufficient, in itself, to render the Agreement adhesionary. The

---

[11] Bernard also argues, in general terms, that the circumstances are "confusing" because of differences in terms and instructions in the three arbitration agreements at issue. (Doc. 17, p. 8). It is true that the agreements use different terminology. But those differences do not render any of the agreements unconscionable. Nevertheless, all of the agreements do share a common characteristic: a written mandate that Bernard's claims be subjected to binding arbitration.

remaining factors of the Aguillard analysis indicate that Bernard consented to arbitration.  Therefore, the Andries Arbitration Agreement is enforceable.

## III.  Conclusion

"[B]oth Louisiana and federal law favor arbitration such that 'any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Gunderson v. F.A. Richard & Associates, Inc., 2005-917, p. 3 (La. App. 3 Cir. 8/23/06, 3); 937 So.2d 916, 920 (quoting Aguillard, 2004-2804 at p. 8, 908 So. 2d at 8).  In light of this presumption, and absent a viable reason to deviate from it,

IT IS HEREBY RECOMMENDED that Defendants' First and Supplemental Motions to Compel Arbitration and Stay (Docs. 13, 24) be GRANTED.

IT IS FURTHER RECOMMENDED that this matter be STAYED, and that the parties be ORDERED to proceed to arbitration.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.


THUS DONE AND SIGNED in Alexandria, Louisiana, this 11ᵗʰ day of February, 2016.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE